UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 13-0184-01 (ESH) |
| | VIOLATION: |
| v. | 18 U.S.C. §§ 203(b)(2) and 216(a)(1) (Offer of Unauthorized Compensation to a Public Official) |
| ANTHONY C. Y. CHENG SR., | |
| Defendant. | |

**FILED**
APR 16 2014
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## STATEMENT OF OFFENSE

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, **ANTHONY C. Y. CHENG, SR.**, and the United States agree and stipulate that, at all relevant times:

Relevant Entities and Individuals

1. Defendant **ANTHONY C. Y. CHENG, SR.**, owned, among other businesses, Tony Cheng's Mongolian Restaurant, which was located in Chinatown in the District of Columbia.

2. The District of Columbia Taxicab Commission ("DCTC") was a subordinate agency within the executive branch of the District of Columbia government with exclusive authority for intrastate regulation of the taxicab industry. The DCTC, among other things, established criteria, standards, and requirements for obtaining a taxicab license, including the licensing of owners, operators, companies, associations, and fleets. It also established licensing fees. The DCTC was comprised of nine members. Five were members of the public and three were from the industry. Those members served for five-year terms and were appointed by the

Mayor of the District of Columbia with the advice and consent of the District of Columbia Council. The ninth member was the chairperson, who was appointed by and served at the pleasure of the Mayor. The DCTC employed Public Vehicle Enforcement Inspectors, who were also known as Hack Inspectors. The Hack Inspectors were deployed to prevent illegal taxicab operations in the District of Columbia. If a Hack Inspector identified a taxicab that was operating unlawfully, the Hack Inspector was authorized to have the taxicab towed and impounded.

3. From on or about July 7, 2007, through on or about April 26, 2011, Public Official Number One was Chairperson of the DCTC, and was the chief administrative officer of the DCTC in charge of the organization and administration of the DCTC.

4. In or about the fall of 2010, defendant **ANTHONY C. Y. CHENG, SR.**, decided to start a towing company in the District of Columbia. In order to operate a towing company in the District of Columbia, District of Columbia Municipal Regulations required every person and entity that provided, or offered to provide, towing services within the District of Columbia, to have: (1) a license for a locked storage facility; (2) a towing license, and (3) insurance.

5. On or about December 18, 2010, defendant **ANTHONY C. Y. CHENG, SR.**, met with Public Official Number One at Tony Cheng's Mongolian Restaurant. During the meeting, defendant **ANTHONY C. Y. CHENG, SR.**, offered Public Official Number One compensation of ten percent of the profits of his towing company if Public Official Number One assisted him in completing the paperwork associated with establishing the towing company and agreed to assist the towing company in securing towing assignments from DCTC. Public Official Number One, who was by then working in cooperation with the Federal Bureau of Investigation, stated he would accept the offer of compensation for assisting defendant **ANTHONY C. Y. CHENG, SR.**

6.      On or about January 12, 2011, defendant **ANTHONY C. Y. CHENG, SR.**, once again met with Public Official Number One at Tony Cheng's Mongolian Restaurant.  Defendant **ANTHONY C. Y. CHENG, SR.**, advised Public Official Number One that he had acquired two trucks for his towing company and had completed all of the necessary documentation to establish the company.  During the meeting, defendant **ANTHONY C. Y. CHENG, SR.**, again requested the assistance of Public Official Number One in providing representational services including the securing of at least 100 DCTC towing assignments for defendant **ANTHONY C. Y. CHENG, SR.**'s towing company per month:

| | |
|---|---|
| CHENG, SR.: | Hey brother, take care for me, okay.  Help me out. |
| P.O. NUMBER ONE: | What do you need me to do? |
| CHENG, SR.: | No, you know, tow car business, you gotta help me out. |
| P.O. NUMBER ONE: | Well, you tell me what you need. |
| CHENG, SR.: | You know what I need. |
| P.O. NUMBER ONE: | As soon as you give me your paperwork, we'll go from there. |
| CHENG, SR.: | Alright. |
| P.O. NUMBER ONE: | Okay.  We'll get you towing about a hundred cars a month. |
| CHENG, SR. | Hundred not enough. |
| P.O. NUMBER ONE: | How many do you want? |
| CHENG, SR. | More, who cares.  You get taxicab, hundred a month, huh? Taxicab only a hundred a month? |
| P.O. NUMBER ONE: | Well, you figure, we only tow them when they do something illegal. |

7.   This factual proffer is a limited summary of defendant **ANTHONY C. Y. CHENG, SR.**'s conduct in connection with Count One (Offer of Unauthorized Compensation to a Public Official, in violation of Title 18, United States Code, Sections 203(b)(2) and 216(a)(1)) of the Superseding Information.  The limited purpose of this Statement of Offense is to demonstrate that a factual basis exists to support the defendant's guilty plea in this case.

                    Respectfully submitted,
                    RONALD C. MACHEN JR.
                    United States Attorney
                    DC Bar No. 447889

By: _____
                    Lionel Andre, D.C. Bar # 422534
                    Loyaan Egal, NY Bar
                    Assistant United States Attorneys
                    Fraud & Public Corruption
                    555 4th Street, N.W.
                    Washington, D.C. 20001
                    (202) 252-7818 (Andre)
                    (202) 252-7899 (Egal)
                    Lionel.Andre@usdoj.gov
                    Loyaan.Egal@usdoj.gov

## DEFENDANT'S ACCEPTANCE

I have read every word of this Statement of Offense and carefully reviewed every part of it with my attorneys. Pursuant to Fed. R. Cr. P. 11, after consulting with my attorney, I agree and stipulate to this Statement of Offense. I am fully satisfied with the legal services provided by my attorneys in connection with this Statement of the Offense and all matters relating to it. I fully understand this Statement of the Offense and voluntarily agree to it. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully. No agreements, promises, understandings, or representations have been made with, to, or for me other than those set forth above.

Date: 4/16/14

Anthony C.Y. Cheng, Sr.
Defendant

I have reviewed and discussed every part of this Statement of the Offense with my client, Mr. Anthony C.Y. Cheng, Sr. It accurately and completely sets forth the Statement of the Offense agreed to by Mr. Anthony C.Y. Cheng, Sr., and the Office of the United States Attorney for the District of Columbia. I concur with his decision to stipulate to this Statement of Offense.

Date: 4/16/14

Jon W. Norris, Esquire
Attorney for Anthony C.Y. Cheng, Sr.